IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL TAYLOR, *also known as* PAUL J. TAYLOR, | No. 9:17-cv-01124-JKS |
| Petitioner, | MEMORANDUM DECISION |
| vs. | |
| RAYMOND COVENY, Superintendent, Elmira Correctional Facility,[1] | |
| Respondent. | |

Paul Taylor, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Taylor is in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS") and

incarcerated at Elmira Correctional Facility. Respondent has answered the Petition, and Taylor

has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 12, 2012, Taylor, along with co-defendants Scott Denno and Michael Rivers,

was charged with the second-degree murder of Robert Rennie, first-degree gang assault, and

third-degree criminal possession of a weapon. The information alleged that Taylor, Denno, and

Rivers caused Rennie's death in August 2012 by repeatedly kicking him as he lay on a street.

Taylor proceeded to a jury trial on September 23, 2013,[2] during which thirty-two witnesses

testified for the prosecution. Over a week later, the jury found him guilty of all three counts.

---

[1]     Raymond Coveny, Superintendent, Elmira Correctional Facility, is substituted for Donald Uhler, Superintendent, Upstate Correctional Facility. FED. R. CIV. P. 25(c).

[2]     Denno and Rivers were tried separately from Taylor.

The trial court subsequently sentenced him as a second felony offender to concurrent terms of 25 years to life imprisonment on the murder and gang assault convictions and, consecutive thereto, 3½ to 7 years' imprisonment for the criminal possession of a weapon conviction.

Through counsel, Taylor appealed his conviction, arguing that: 1) the verdict convicting him of second-degree murder was against the weight of the evidence and unsupported by legally sufficient evidence; 2) the admission of prior statements by a witness improperly bolstered the witness's credibility; 3) Taylor's right to effective cross-examination was violated when the court ruled that, if Taylor introduced one of Denno's statements, he would open the door for the People to introduce other of Denno's statements; 4) the trial court erred in denying Taylor's for-cause challenge to a prospective juror; 5) the trial court erred in denying Taylor's motion to suppress evidence obtained as a result of his arrest; 6) the trial court erred in imposing the criminal possession of a weapon sentence to run consecutive, rather than concurrently, to the other sentences; 7) the trial court erred in sentencing Taylor as a second felony offender because the predicate felony conviction was obtained in violation of Taylor's constitutional rights; and 8) the aggregate sentence was unduly harsh and excessive. Respondent conceded that the criminal possession of a weapon sentence should run concurrently with the other sentences, but otherwise opposed the appeal. The Appellate Division of the New York Supreme Court unanimously modified the judgment to reflect the correction of the criminal possession of a weapon sentence but otherwise affirmed the judgment against Taylor in a reasoned opinion issued on December 3, 2015. *People v. Taylor*, 20 N.Y.S.3d 708, 714 (N.Y. App. Div. 2015). Taylor filed a counseled application for leave to appeal to the New York Court of Appeals, which was summarily denied on February 25, 2016. *People v. Taylor*, 51 N.E.3d 575, 575 (N.Y. 2016).

Taylor then moved *pro se* to vacate the judgment pursuant to New York Criminal

Procedure Law ("CPL") § 440.10. In that motion, Taylor argued that: 1) his trial counsel was

ineffective for failing to a) challenge the admission of property recovered during a search, b) call

an expert witness to provide results of comparisons between the victim's injuries and the shoes

worn by the defendants, c) call Michelle Nolan as a defense witness regarding a statement she

gave to the police that the co-defendants had stated their intent to kill the victim, and d) object to

the prosecutor's summation remarks that the collar of the shirt recovered from Taylor's shirt

bore his initials; 2) new evidence that the prosecution's DNA expert was terminated for lying

about his qualifications for using the system that was utilized to conduct DNA testing in his case

warranted reversal of his conviction; and 3) the prosecution violated their *Brady*[3] obligations by

failing to provide the defense complete video footage of his interrogation. The county court

denied the motion in a reasoned, unpublished opinion issued on June 26, 2017. Taylor sought

leave to appeal to the Appellate Division, which was denied without comment September 21,

2017.

Taylor then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this

Court on October 5, 2017. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).

---

[3] *Brady v. Maryland*, 373 U.S. 8 (1963). The term "*Brady*" is a shorthand reference to the rules of mandatory discovery in criminal cases under federal law. *Brady*, 373 U.S. at 8.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Taylor argues that: 1) the verdict convicting him of second-degree murder was against the weight of the evidence and unsupported by legally sufficient evidence; 2) the admission of prior statements by a witness improperly bolstered the witness's credibility; 3) Taylor's right to effective cross-examination was violated when the court ruled that, if Taylor introduced one of Denno's statements, he would open the door for the People to introduce other of Denno's statements; 4) the trial court erred in denying Taylor's for-cause challenge to a prospective juror; 5) the trial court erred in denying Taylor's motion to suppress evidence obtained as a result of his arrest; 6) the trial court erred in sentencing Taylor as a second felony offender because the predicate felony conviction was obtained in violation of Taylor's constitutional rights; 7) trial counsel was ineffective for a variety of reasons; 8) new evidence that the prosecution's DNA expert was terminated for lying about his qualifications for using the system that was utilized to conduct DNA testing in his case warranted reversal of his conviction; and 9) the prosecution violated their *Brady* obligations by failing to provide the defense complete video footage of his interrogation.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. Insufficiency of the Evidence/Verdict Against Weight of Evidence (Ground 1)

Taylor first argues, as he did on direct appeal, that the verdict was against the weight of the evidence and unsupported by legally sufficient evidence. As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). The Court therefore denies Taylor's weight of the evidence claim on that basis.

Taylor's insufficiency of the evidence claim, although cognizable on federal habeas review, is also without merit.   As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).   This Court must therefore determine whether the New York court unreasonably applied *Jackson*.   In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.   *Jackson*, 443 U.S. at 318-19.   Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.   *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.   *Jackson*, 443 U.S. at 324 n.16.   A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.   When it has spoken, its pronouncement is to be

accepted by federal courts as defining state law . . . .").  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

In support of his claim, Taylor avers that the evidence presented at trial was insufficient to establish the requisite intent to kill.  According to Taylor, "while there was evidence that Petitioner wanted to beat and injure Rennie, there was none that he wanted to kill him."  Taylor attacks the value of the evidence against him and point to inconsistencies in witness testimony.  But this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal" and deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses).  Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

As the Appellate Division explained when rejecting this claim on direct appeal:

> The focus of [Taylor's] argument is that the evidence did not demonstrate that he intended to kill the victim.  "Because intent is an invisible operation of the mind, direct evidence is rarely available" (*People v. Rodriguez*, 17 N.Y.3d 486, 489, 933 N.Y.S.2d 631, 957 N.E.2d 1133 [2011] [internal quotation marks, brackets and citations omitted] ) and, thus, "it may be inferred from a defendant's conduct and the surrounding circumstances" (*People v. Callicut*, 101 A.D.3d 1256, 1258, 956 N.Y.S.2d 607 [2012], lv. denied 20 N.Y.3d 1096, 965 N.Y.S.2d 792, 988 N.E.2d 530 [2013] [internal quotation marks and citation omitted] ).
> Proof at trial included that [Taylor], Denno and Rivers believed that the victim had been physically assaulting Rivers' cousin, Samantha Lacroix.  Lacroix had an ongoing relationship with the victim, she had also recently had a brief relationship with [Taylor], and [Taylor] desired to continue his relationship with Lacroix.  [Taylor],

Denno, Rivers and Rivers' wife—Angela Rivers—were in the vicinity of Lacroix's apartment when Rivers and Denno began a physical altercation with the victim. As Rivers and the victim started to fist fight, [Taylor] reportedly attacked the victim from behind knocking him to the ground and [Taylor]—knowing that he was wearing steel-toed boots —commenced kicking the victim. Rivers and Denno joined the kicking, although their kicks were described by Angela Rivers as being not as violent as [Taylor's]. Eventually Rivers and Denno stopped kicking the victim, but [Taylor] continued to kick the victim, disregarding the admonition of the others at the scene to stop, including a warning that he was going to kill the victim. [Taylor] repeatedly kicked the victim with such force that the victim's body would come off the ground. [Taylor] was about 6 feet 4 inches tall and weighed well over 200 pounds, whereas the victim was 5 feet 7 inches tall and weighed less than 120 pounds. Although the victim was able to leave the immediate area when the attack ceased, he quickly succumbed to his injuries and died. Following the attack, [Taylor] bragged about how hard he had kicked the victim with his steel-toed boots, and he told Lacroix later that night that she would not have to worry about the victim knocking on her door anymore. Blood on [Taylor's] boot was consistent with the victim's DNA.

The forensic pathologist who performed an autopsy on the victim described the victim's body as having what appeared to be a series of footwear impressions. He stated that the victim had a large quantity of blood—about a quarter of all his blood—in his abdominal cavity. The victim's many injuries included, among others, collapsed lungs, over 20 fractures of his ribs and a fractured thyroid cartilage in his neck. The various lacerations suffered by the victim included a five-inch tear of his liver. The pathologist opined that the victim's cause of death was internal hemorrhage and the collapse of both lungs due to multiple traumatic blunt force injuries. He stated that, without medical attention, both injuries could have independently caused the victim's death and that, while the victim could have walked a short distance after sustaining the injuries, he would not have survived for more than 15 minutes. Viewed most favorably to the People, the evidence regarding the circumstances of the attack, the nature of [Taylor's] repeated kicking of the incapacitated victim with steel-toed boots, and the severity of the injuries suffered by the victim provided sufficient grounds for the jury to infer that [Taylor] intended to kill the victim (*see People v. Hill*, 115 A.D.2d 239, 239, 495 N.Y.S.2d 843 [1985], lv. denied 67 N.Y.2d 884, 501 N.Y.S.2d 1036, 492 N.E.2d 1243 [1986]).

*Taylor*, 20 N.Y.S.3d at 711-12.

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Taylor bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden.

For the reasons discussed in the Appellate Division's thoughtful analysis, the record does not compel the conclusion that no rational trier of fact could have found proof that Taylor intended to kill Rennie, especially considering the double deference owed under *Jackson* and the AEDPA. Taylor therefore cannot prevail on his insufficiency of the evidence claim either.

## B.    Admission of Prior Statements/Improper Bolstering (Ground 2)

Taylor next argues that the trial court erroneously allowed Angela Rivers to give bolstering testimony. The Appellate Division considered and rejected this claim on direct appeal as follows:

> Here, Angela Rivers gave three statements to police, two shortly after the incident in which she did not mention what happened to the victim and a third about a month later that included information about the victim. At trial, she acknowledged, without objection from [Taylor], that she had given the first two statements and that she had omitted in those statements information about the victim. The People then elicited that she had given a third statement, and she was asked whether she "put in there what happened to [the victim] on Mill Hill Road?" Over [Taylor's] objection on the ground of bolstering, she answered simply, "Yes, I did." She did not testify about the content of her prior third statement. This limited response was not hearsay and did not constitute bolstering. Nor was it bolstering to acknowledge—without providing information about what was said—that she had testified in the earlier trials of Denno and Rivers.

*Taylor*, 20 N.Y.S.3d at 712 (citation omitted).

Taylor fares no better on federal habeas review. To the extent his claim merely challenges the admission into evidence of Rivers' prior consistent statement, that claim is not cognizable on federal habeas review. While New York law prohibits "bolstering," which involves "the fortification of a witness's testimony and credibility through the use of a prior consistent statement," *People v. Buie*, 658 N.E.2d 192, 197 (N.Y. 1995), unless such evidence is being used "to rebut a claim of recent fabrication," *id*, "it is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to

a fair trial,"[4] *Nieves v. Fischer*, No. 03 Civ. 9803, 2004 WL 2997860, at *7 (S.D.N.Y. Dec.28,

2004) (quotations and citations omitted); *see also Ochoa v. Breslin*, 798 F.Supp.2d 495, 505-06

(S.D.N.Y. 2011). Courts in this circuit have consistently held that "the concept of 'bolstering'

really had no place as an issue in criminal jurisprudence based on the United States

Constitution," *Castaldi v. Poole*, No. 07–cv–1420, 2013 WL 789986, at *7 (E.D.N.Y. Mar.1,

2013) (quotations and citations omitted), and is merely a state law evidentiary issue, *see, e.g.*,

*Glover v. Burge*, 652 F. Supp. 2d 373, 377 (W.D.N.Y. 2009) ("'[B]olstering' of a prosecution

witness's testimony does not state a constitutional claim redressable on federal habeas review.");

*Diaz v. Greiner*, 110 F. Supp. 2d 225,234 (S.D.N.Y. 2000) (holding that bolstering claims are

not cognizable on federal habeas review).

As the Second Circuit explained:

> The combination of the Supreme Court's "fundamental fairness" cases and the
> limited habeas jurisdiction granted by AEDPA means that [petitioners] must demonstrate
> that the effect of the admission of ["bolstering" evidence] was so prejudicial to his
> defense that he was deprived of due process *and* he must identify a Supreme Court case
> that clearly establishes that the admission of evidence that improperly bolsters a
> prosecution witness's testimony constitutes a violation of the Fourteenth Amendment."

*Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) (emphasis in original). "Because no

Supreme Court case requires such a conclusion," the Second Circuit in *Evans* reversed the

---

[4]      The Court notes that Federal Rule of Evidence 801(d)(1)(B) addresses the use of
prior consistent statements in federal court, which, like New York law, provides that prior
statements consistent with the testimony of a witness who is subject to cross-examination may be
introduced and used as substantive evidence when offered "to rebut an express or implied charge
that the declarant recently fabricated it or acted from a recent improper influence or motive in so
testifying." But the Federal Rules of Evidence are, of course, not binding on state courts. *See
Tome v. United States*, 513 U.S. 150, 167 (1995) (explicitly limiting its holding that the
admission of hearsay evidence infected proceedings and required new trial "to the requirements
for admission under Rule 801(d)(1)(B)").

district court's grant of habeas relief.  *Id.*  In the absence of any clearly established federal law on this issue, AEDPA relief is likewise foreclosed here.  *See Carey*, 549 U.S. at 77.  Taylor is thus not entitled to relief on this ground.

## C.    Confrontation Violation (Ground 3)

Taylor also raises his direct-appeal claim that the trial court erred in permitting the People to cross-examine a State Police investigator, who was called by Taylor as a witness, regarding certain statements Denno made to him.  The record reflects that Denno, a witness and participant in the crimes, gave three statements to the investigator, and Denno invoked his Fifth Amendment right not to testify at Taylor's trial.  Taylor called the investigator as a witness to elicit information about Denno's second statement, which was favorable to Taylor.  The trial court concluded that this opened the door for the People to cross-examine the investigator about the content of the other two Denno statements, which provided context and were less favorable to Taylor.

The Confrontation Clause of the Sixth Amendment mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987).  This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial.  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).  The Confrontation Clause, however, "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Id.* at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).  Thus, "[i]f a statement is offered for a purpose other than proving the

truth of the matter asserted, such as to explain actions taken as a result of the statement or to show how an investigation developed, its admission violates neither the hearsay rule nor the Confrontation Clause." *Rolland v. Greiner*, 02 Civ. 8403, 2006 WL 779501, at *3 (S.D.N.Y. Mar. 27, 2006); *see also Street*, 471 U.S. at 413-14 (no Confrontation Clause where prosecution introduced accomplice's out-of-court confession because it was not introduced for its truth but only to impeach the defendant's version of events).

In this case, the court permitted the People to cross-examine Investigator Levison about the other two statements Denno had made in order to impeach the statement that Taylor explicitly elicited. Upon admitting that evidence, the court instructed the jury that it could consider for its truth only the statement offered by the defense (the second statement). The court then instructed the jury that it could not consider for their truth the other two statements offered by the prosecution: "[Y]ou may consider the other statements made by Mr. Denno as reflected in the testimony of this witness, but those other statements may only be considered in determining whether the [second statement] is true and accurate. You can only consider those other statements in that regard and not for the truth of what was stated orally to the investigator on the first occasion or the third occasion." As such, the trial court's admission of the statements for the limited purpose of impeaching the elicited statement, and subject to the trial court's limiting instruction, cannot form the basis federal habeas relief.

## D.     Erroneous Denial of For-Cause Challenge (Ground 4)

Taylor additionally argues that it was reversible error for the trial court to deny his challenge for cause to a prospective juror. The Appellate Division considered and rejected his claim on direct appeal as follows:

Defense counsel asked a prospective juror whether she "might take a negative inference" if [Taylor] did not testify, and the juror responded: "I can't say that for sure, but I think I would question to myself why he wouldn't testify [on] his own behalf." County Court then stated to the prospective juror: "If you were instructed on what the law is, that the law is that you cannot make any unfavorable inference against him if he fails to testify or even if he does not put on any evidence at all, would you follow that law?" The prospective juror stated: "I would have to." This constituted an "unequivocal assurance" from the prospective juror that she would be "able to reach a verdict based entirely upon the court's instructions on the law."

*Taylor*, 20 N.Y.S.3d at 713 (citation omitted).

The U.S. Supreme Court has expressly stated, "So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *cf. United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) ("[I]f the defendant elects to cure [a trial court's erroneous refusal to strike a juror for cause] by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right."); *United States v. Perez*, 387 F.3d 201, 207-08 (2d Cir. 2004) (applying *Martinez-Salazar*).

Taylor does not argue before this Court that the jury before which he was tried was not impartial. Nor did he present that argument to the Appellate Division. On direct appeal, Taylor's argument was that under the facts and New York law he was entitled to a reversal of his judgment and conviction without showing that the jury was not impartial. *See* CPL § 270.20(2) (under New York law, an erroneous ruling by the trial court denying a challenge for cause constitutes reversible error if the defendant has exhausted his peremptory challenges at the time, or if the defendant peremptorily challenges the prospective juror and exhausts his peremptory challenges before jury selection is complete). Whatever the merits of Taylor's arguments under

New York law may be, by failing to present any evidence or argument that the jury that convicted him was not impartial, Taylor has failed to present a federal constitutional argument cognizable by this Court in a federal habeas proceeding. Accordingly, Taylor is not entitled to relief on this ground.

## E. Fourth Amendment Claim (Ground 5)

In Ground 5, Taylor raises his direct appeal claim that the trial court should have granted his motion to suppress physical evidence seized upon his arrest because the police lacked probable cause for that arrest. However, any challenge to the arrest and seizure is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[5]" federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden*,

---

[5]     The Fourth Amendment provides:

>    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

*Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled. *See id.* at 70 & n.1. Taylor has not asserted the existence of an unconscionable breakdown of that process, nor has he alleged any facts that would demonstrate such a breakdown in this case. Taylor therefore cannot prevail on his challenge to the legality of his arrest and the admission of the seized physical items.

## F.      Sentencing Error (Ground 6)

Taylor next avers, as he did on direct appeal, that he was improperly adjudicated a second felony offender based on a predicate felony conviction that was obtained in violation of his federal constitutional rights. The record reflects that Taylor's predicate offender status was based on a 1997 conviction for second-degree manslaughter, which Taylor claims was unconstitutional because his guilty plea was obtained through the ineffective assistance of trial counsel.

A federal district court may exercise jurisdiction over a petition for habeas relief only if the petitioner is "in custody pursuant to the judgment of a State court" when the petition is filed. 28 U.S.C. § 2254(a); *see Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam); *Ogunwomoju*

*v. United States*, 512 F.3d 69, 75 (2d Cir. 2008) (noting that the "in custody" requirement is jurisdictional). This statutory language has been interpreted as requiring that a petitioner be "in custody" under the conviction or sentence under attack at the time the petition is filed. *Maleng*, 490 U.S. at 490-91; *Bomasuto v. Perlman*, 680 F. Supp. 2d 449, 455-46 (S.D.N.Y. 2010). If a petition is filed after a sentence has been fully served and expired, the petitioner is no longer "in custody" pursuant to that conviction and she may not directly challenge it by way of a petition for writ of habeas corpus in federal court. *See Lackawanna Cty. Dist. Att'y v. Coss*, 532 U.S. 394, 401-02 (2001). The Supreme Court has explicitly ruled that a habeas petitioner does not "remain in custody under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." *Maleng*, 490 U.S. at 492; *Valdez v. Hulihan*, 640 F. Supp. 2d 514, 515 (S.D.N.Y. 2009) (holding that once a petitioner's sentence has expired he or she is no longer "in custody" under that conviction, "even when the possibility exists that the conviction may be used to enhance a future sentence").

The record reflects that Taylor served his full sentence on the 1997 conviction before the instant crimes took place. His 1997 conviction is thus no longer open to direct or collateral attack. Since his sentence expired before the instant crimes occurred, he was no longer "in custody" on that conviction within the meaning of § 2254 when he filed the instant petition in 2017. Taylor's challenge to his enhanced sentence based on his 1997 conviction is thus foreclosed by *Coss*.[6]

---

[6] The Supreme Court's majority in *Coss* recognized an exception where the petitioner "can demonstrate that his current sentence was enhanced on the basis of a prior conviction that was obtained where there was a failure to appoint counsel in violation of the

**G.      Ineffective Assistance of Counsel (Ground 7)**

Taylor next contends trial counsel rendered ineffective assistance in a variety of ways. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Taylor must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same

---

Sixth Amendment." 532 U.S. at 404-05. While Taylor argues that trial counsel rendered ineffective assistance during the plea negotiations that resulted in the 1997 conviction, there is no indication that there was a complete failure to appoint counsel, as required to meet the *Coss* exception.

as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)).  The difference is in the second prong.  Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different.  "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)).  "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588).  "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard.  *Turner*, 840 N.E.2d at 126.  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

Taylor's ineffective assistance claims must fail, however, even under the more favorable New York standard. As an initial matter, Respondent correctly contends that two of Taylor's ineffective assistance claims are procedurally barred from federal habeas review. Taylor raised his ineffective assistance claims in a motion to vacate the judgment pursuant to § 440.10. The county court found that all claims were based on the record and therefore could have been, but were not, raised on direct appeal.[7] Federal courts in this Circuit have consistently held that where a state court concluded that a petitioner's claim raised in a CPL § 440.10 was procedurally barred by CPL § 440.10(2)(c), and the claim was indeed fully developed in the trial record, the petitioner has also defaulted that claim on federal habeas review. *See Sweet v. Bennett*, 353 F.3d 135, 139-41 (2d Cir. 2003); *McCall v. Rivera*, 965 F. Supp. 2d 311, 334-35 (S.D.N.Y. 2013); *Hogan v. West*, 448 F. Supp. 2d 496, 506-07 (W.D.N.Y. 2006). As Respondent notes, Taylor's claims that counsel was ineffective for failing to argue for the suppression of property recovered from the second day of the police search is based on the record, as is his claim that counsel was ineffective for failing to object to the prosecutor's summation remarks.[8] Because Taylor has failed to assert cause for the default and prejudice, or that failure to consider the claims will

---

[7]     *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a ]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . .").

[8]     As Respondent concedes, contrary to the conclusion of the § 440 court, it does not appear that his claims that counsel was ineffective for failing to call as witnesses Michelle Nolan and an expert to compare Rennie's injuries to the impressions of Taylor's boots and the shoes of his accomplices were based on the record. As noted *infra*, however, the claims fail on their merits in any event.

result in miscarriage of justice, these claims are procedurally defaulted from review by this Court and subject to dismissal on that basis. *Sweet*, 353 F.3d at 141.

Moreover, the claims are also without merit. Taylor first argues that counsel was ineffective for failing to argue at the suppression hearing that a white shirt recovered from LaCroix's apartment should be suppressed because the police recovered it during a second search of the premises after it had concluded its initial search pursuant to a warrant the previous evening. Taylor fails to provide a basis for suppression that would have been successful. Moreover, he does not establish that, had the shirt been excluded from evidence, it would have altered the outcome of trial, as evidence of Rennie's blood on Taylor's shirt was cumulative of other evidence of his guilt, including the eyewitness testimony of Angela Rivers, the corroborating testimony of Brandon Rivers, and the admission of Taylor's boots, which were seized pursuant to a separate warrant and also contained Rennie's blood.

Taylor additionally claims that counsel was ineffective for failing to call an expert witness to compare Rennie's injuries to the impressions of Taylor's boots and the shoes of his accomplices. Taylor attached to his CPL § 440.10 motion a report from an FBI investigator who had examined the impressions that trial counsel had apparently shared with Taylor prior to trial. Contrary to Taylor's assertions, however, the report is not exculpatory for Taylor. At best, it stated that certain impressions could not be matched to Taylor's boots. For the majority of impressions found on Rennie's body, the report made no determination as to whether Taylor's boot could have made the impression. It thus appears that counsel consulted an expert, but made the tactical determination not to call the investigator as a witness because it would not have

undermined Angela River's testimony that Taylor kicked the victim or the victim's blood found on Taylor's boot.

Similarly, Taylor fails to show that counsel was ineffective for failing to call Michelle Nolan as a witness. In support of Taylor's CPL § 440.10 motion, he attached the notes from a law enforcement interview of Nolan conducted on September 5, 2012. Nolan's statement said that, about two months prior to Rennie's death and a day after Rennie had been arrested for assaulting Samantha LaCroix, Michael and Angela Rivers were in the store where Nolan worked, and she heard Michael Rivers commenting that he and Denno were going to kill Rennie for beating Samantha. The notes indicate that Nolan "was very apprehensive about talking to the police, stating that she was friends with Angela Rivers and didn't want to say anything against her or be considered 'a rat.' Nolan would not provide a deposition." Taylor argues that counsel should have called Nolan to testify regarding the incident, which he believes would have led the jury to conclude that Rivers and Denno were the ones who rendered the fatal kicks on Rennie. But the statement does not exonerate Taylor; Rivers and Denno's intent to kill Rennie two months prior does not negate the possibility that Taylor had the intent to kill Rennie when he repeatedly kicked him. Because that evidence does not undermine his own intent, Taylor fails to show that he was prejudiced by counsel's decision to not call Nolan as a witness.

Finally, Taylor complains that counsel should have objected to the prosecutor's summation where she read Taylor's initials from under the collar of the blood-stained shirt admitted into evidence. Taylor argues that counsel's omission allowed the prosecutor to wrongly link the shirt, which was stained with Rennie's blood, to Taylor rather than allow the jury to believe that it could have been Rennie's shirt. But Taylor fails to provide any ground on

which counsel could have objected to the prosecutor's statement. As discussed above, Taylor fails to show that the shirt should have been suppressed. The prosecutor's statement was thus a fair comment on the trial evidence. In any event, the jury could have observed for itself Taylor's initials on the shirt. Accordingly, Taylor is not entitled to relief on any argument advanced in support of his ineffective assistance claim.

## H. Prosecutorial Misconduct (Grounds 8, 9)

Finally, Taylor claims, as he did in his CPL § 440.10 motion, that the prosecution committed misconduct in two ways. First, he contends that the prosecution presented an expert witness who had falsified his qualifications to utilize computer-assisted DNA technology used to analyze the DNA samples that were recovered in Taylor's case. He additionally avers that the prosecution violated its disclosure obligations under *Brady* by failing to provide the defense complete video footage of his interrogation.

### 1. Expert witness lying

Taylor first argues that his conviction should be reversed because the People's DNA expert, Brian Murphy, falsified his qualifications to utilize TrueAllele3, a computer-assisted DNA technology used to analyze the DNA samples recovered in his case. Specifically, he contends that Murphy used the software to conduct the DNA analysis in his case, even though he was not qualified to do so. The county court, on § 440.10 review, considered and denied this claim as follows:

> [Taylor] asserts that the judgment of conviction and sentence must be vacated because new evidence favorable to [Taylor] has been discovered since the trial. The "new evidence" relied upon by [Taylor] consists of newspaper reports of an investigation into DNA testing practices at the New York State Police laboratory in 2015-16, one such report identifying Brian Murphy, a DNA analyst who testified at Taylor's trial, as having been "implicated in the scandal." Taylor also claims that the DNA evidence, which

identified the blood on [Taylor's] left boot as belonging to Rennie, was performed on the TrueAllele3 system. This particular assertion is without merit in fact since there was no evidence at trial, nor in Taylor's motion, that the TrueAllele3 system was used by the New York State Police laboratory in 2012 when analyzing the DNA evidence collected in this case.

. . . .

While Taylor avers that Murphy was terminated from employment with the laboratory, there is no evidence of termination for cause in the reports relied upon by Taylor, only that Murphy "left the lab months ago." No evidence has been submitted even suggesting that Murphy failed to comply with the laboratory's testing protocols and procedures in Taylor's case or otherwise during the period which the DNA evidence in this case was analyzed. There is also no evidence that the TrueAllele3 system was used in the State Police laboratory in October 2012. Taylor's claims amount to nothing more than speculation and innuendo which, at most, could be used only to impeach Murphy and thus does not constitute new evidence sufficient to vacate his conviction. Moreover, the "evidence" is not such as would change the result if a new trial were granted since the primary evidence against [Taylor] was the eyewitness testimony of Angela Rivers. The DNA evidence of Rennie's blood on [Taylor's] left boot is merely cumulative to that testimony.

The county court also rejected Taylor's request for an evidentiary hearing. In the instant Petition, Taylor seeks "any . . . relief to which petitioner may be entitled," which may be construed as a request for this Court to hold an evidentiary hearing in these federal proceedings. The Supreme Court, however, made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996). Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *see* § 2254(e)(2), AEDPA requires that, in addition to showing diligence in state court, a petitioner must allege a colorable claim for relief in order to obtain an evidentiary hearing, *see Schriro v. Landrigan*, 550 U.S. 465, 474-45 (2007). The record shows that the TrueAllele3 system was not

approved for or used in the New York State Police Crime Lab when the DNA in this case was analyzed, and the laboratory results in Taylor's case were developed using only the traditional STR DNA testing, which was not the subject of the newspaper reports relied upon by Taylor.

Because Taylor provides no evidence to suggest that the DNA analysis in his case was faulty, the county court's denial of Taylor's claim without an evidentiary hearing is both reasonable and fully supported by the record. For the reasons persuasively and thoroughly articulated on § 440.10 review, Taylor is thus not entitled to federal habeas relief on this claim.

### 2. *Brady* violation

Taylor also avers that the People failed to comply with their discovery obligations by not disclosing a complete recording of video surveillance taken while Taylor was inside a police interrogation room. To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose." *Mack v. Conway*, 476 F. App'x 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Here, however, Taylor fails to show that the challenged evidence even existed. Taylor acknowledges that the People provided an audio recording spanning about 12 hours, which was created by a police investigator who kept the recorder in his shirt pocket and allowed it to run from the time he first encountered Taylor, as well as a video recording that depicts a portion of Taylor's time in the interrogation room. Taylor claims, without support, that the People were also in possession of a longer video recording that they failed to provide to the defense, which would show that the police had entered the room and seized Taylor's boots before a court had

issued a warrant for their seizure. The People stated in their response that they had turned over all recordings that existed, and Taylor does not establish anything to the contrary. Taylor thus fails to show that the People violated *Brady*, and he is not entitled to relief.

## V. CONCLUSION

Taylor is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 19, 2019.

      /s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
